UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) **Marlene Coleman-Scruggs** ) ) Plaintiff, ) ) v. ) ) (1) **United States of America;** ) (2) **St. John Medical Center, Inc.; dba Ascension St. John Medical Center;** ) (3) **Tulsa Radiology Associates, Inc.;** ) (4) **and Andra Dale Nuzum-Keim,** ) ) ) Defendants. ) | Case No.  23-CV-131-JAR |

**DEFENDANT ST. JOHN MEDICAL CENTER, INC. D/B/A ASCENSION ST. JOHN MEDICAL CENTER'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND REQUEST FOR EVIDENTIARY HEARING**

COMES NOW the Defendant, St. John Medical Center, Inc. d/b/a Ascension St. John Medical Center ("SJMC" or "Defendant"), by and through its undersigned counsel of record, Charles H. Moody and Daniel C. Adams of the law firm of Rodolf & Todd, and hereby submits its *Reply in Support of its Motion to Disqualify Plaintiff's Counsel and Request for Evidentiary Hearing*. In support hereof, SJMC would show the Court as follows:

### ARGUMENTS AND AUTHORITIES

In his *Response*, Attorney Rush asserts that he does not have confidential information for SJMC that he obtained through an attorney-client relationship and as such, there is no risk of real harm to the judicial process. SJMC respectfully submits that this argument is without merit. Plaintiff relies heavily on *Board of County Commissioners of Harmon County v. Association of County Commissioners of Oklahoma Self-Insured Insurance Group*, 2021 OK 15, 485 P.3d 234. This reliance is misplaced.

1

"When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction is generally prohibited." *Harmon*, at ¶ 17, p. 239-240. "On the other hand, a lawyer who repeatedly handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type, even those the subsequent representation involves a position adverse to the client." *Id*. "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id*. In proving the same, a "former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." *Id* at ¶ 19, p. 240-241. "A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would, in ordinary practice, be learned by a lawyer providing such services." *Id*.

The standard for disqualifying counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. *Harmon*, ¶ 9, p. 237. This is a high burden; however, it is not impossible, and the moving party need only establish the likelihood of harm by a preponderance of the evidence. *Id*. The focus of the inquiry is whether 1) the former cause in which the attorney previously represented the client and current cause are substantially similar, and 2) the attorney obtained any confidential information from his representation of the client in the former cause which would require disqualification. *Id*.

In *Harmon*, the County was sued by an inmate for alleged actions by the Sheriff. The County was insured by the defendant, ACCO-SIG. *Id* at ¶ 2, p. 235. During the underlying case, there were several settlement demands, but the case did not settle. *Id* at ¶ 3, p. 235. Ultimately, the

2

inmate was awarded an amount above the policy limits. *Id* at ¶ 4, p. 235. Following that, the County sued ACCO-SIG for breach of contract and professional negligence. *Id* at ¶ 5, p. 235. The County was represented by two lawyers from Gungoll, Jackson, Box and Devoll, PC in Enid, Oklahoma. *Id*. Several months later, another lawyer from Gungoll, Jackson, Box and Devoll, Attorney Rooney, entered his appearance on behalf of the County. *Id* at ¶ 7, p. 235.

ACCO-SIG moved to disqualify Attorney Rooney and by extension, Gungoll, Jackson, Box and Devoll. ACCO-SIG argued that Attorney Rooney had represented it more than four years earlier in a nearly identical matter. *Id*. ACCO-SIG asserted that Attorney Rooney participated in the litigation and had confidential information that was detrimental to it. *Id*. The Oklahoma Supreme Court held that Attorney Rooney had never met with ACCO-SIG, other than one lunch meeting he attended with a firm partner, never obtained any confidential information or had any personal recollection of any, never met with employees of ACCO-SIG, and never participated in settlement conferences of depositions. *Id* at ¶ 23, p. 241.

The facts presented here are not at all analogous to *Harmon*. As to the first prong, Attorney Rush's previous representation is no doubt substantially similar to the current lawsuit. Attorney Rush worked at Rodolf & Todd, either as a partner or as an associate, from 2009 to 2024. He represented SJMC throughout this entire time in approximately 53 lawsuits. At the time he resigned, Attorney Rush was actively assigned to eleven SJMC lawsuits. The overwhelming majority of Attorney Rush's SJMC representation over the years involved medical negligence cases, including cases in which radiology was alleged to be an issue.[1] The current lawsuit is also a medical negligence action in which Plaintiff alleges that SJMC provided negligent medical care and treatment stemming from an alleged radiology issue. "Although the facts of both cases may

---

[1] Other cases were generally premises liability actions that stemmed from alleged injuries on the SJMC campus.

not be identical, they need not be." *Harmon*, ¶ 21, p. 241.  Where the nature of both lawsuits involves the same type of legal dispute, including SJMC's conduct towards its patients, the same type of confidential information would likely be exposed in both cases. *Id*.  As in *Harmon*, it is clear that Attorney Rush's previous representation of SJMC is substantially similar to the current lawsuit.

With this factor met, the Court must determine whether Attorney Rush "gained any knowledge of any material or confidential information that would jeopardize the integrity of the judicial process." *Id* at ¶ 22, p. 241.  Unlike *Harmon*, Attorney Rush has **extensive** relationships and dealings with SJMC.  In defending medical malpractice cases, Attorney Rush met with SJMC employees, including physicians, nurses, risk managers and other administrative staff, about his cases on a routine basis. Furthermore, he maintained, and upon reasonable belief, currently maintains personal contact information for several of these providers and professionals, including their personal cell phone numbers.  Not only would he meet with these employees in the context of defending their specific conduct, but he would also meet with professionals as fact witnesses and subsequent treating providers. He would also represent providers in depositions when those providers would be subpoenaed in various types of cases.

The present case involves the radiology care by Co-Defendant Andra Dale Nuzum-Keim. Attorney Rush has previously represented SJMC in another lawsuit wherein both Dr. Nuzum-Keim and SJMC were both named defendants and the radiology care was at issue: *Emory v. SJMC, et al.*, Tulsa County Case No. CJ-2019-4085. Exhibit A, *Answer of SJMC in Tulsa County Case CJ-2019-4085*.  In that case, Attorney Rush prepared and responded to discovery, took depositions, retained experts, and corresponded with SJMC regarding defense strategy. Exhibit B, *SJMC's Discovery Requests to Plaintiff*; Exhibit C, *SJMC's Discovery Supplementation Letter to Plaintiff*;

Exhibit D, *SJMC's Expert Disclosure*; Exhibit E, *Deposition of Dr. Comas*, p. 2; Exhibit F, *Deposition of Dr. Bernstein*, p. 2; Exhibit G, *Deposition of Ms. Coyle*, pp. 1, 3; Exhibit H, *Deposition of Ms. Emory*, pp. 1-2.

Additionally, as part of his representation and through his attorney-client relationship, Attorney Rush obtained detailed knowledge about the peer review and credentialing processes at SJMC, which are protected and privileged by Oklahoma law. He has no doubt reviewed several dozen credentialing files and peer review documents, including peer review committee minutes, over the course of the last fifteen years. Similarly, he has specific and thorough information about the Patient Safety Organization ("PSO") for SJMC, including what information is submitted to the PSO, who submits the same, and whether that information would otherwise be available. PSO documents and information are privileged under federal law, and Attorney Rush would not have information or knowledge about the PSO systems but for his attorney-client relationship with SJMC.

In *LaLonde v. St. John Medical Center*, Tulsa County Case No. CJ-2021-2735, the plaintiff sought information subject to SJMC's PSO, as well as information created and maintained by the risk managers at SJMC. There was substantial briefing on this issue, and Attorney Rush participated in multiple meetings with SJMC about its PSO. He also met with and prepared the risk manager for deposition in this case, which included her involvement with the PSO. Exhibit I, *Deposition of Ms. Lawrence*, pp. 2, 6. Ultimately, after an *in camera* review, the Tulsa County Court found that several privileges, including attorney-client, work product, PSO, peer review, and morbidity and mortality, applied to portions of the documents reviewed and submitted by Attorney Rush. Exhibit J, *Order from Tulsa County Case No. CJ-2021-2735*. Attorney Rush unequivocally

has information about SJMC that is protected and privileged and which he would not otherwise have but for his representation of SJMC.

Further, Attorney Rush has attended more depositions and mediations on behalf of SJMC than can be realistically counted. He has been involved in detailed settlement conversations and has knowledge about how SJMC values cases, approaches settlement, and sets its reserves. He has represented SJMC at trial. Most recently, Attorney Rush represented SJMC in *Millaway v. St. John Medical Center*, Tulsa County Case No. CJ-2021-1128. As with the *Emory* lawsuit, Attorney Rush met with SJMC employees, drafted and responded to discovery, both deposed and presented witnesses for depositions, retained experts, attended mediation, engaged in extensive trial strategy discussions with SJMC, including preparing witnesses for trial, developing trial strategy, and working intimately with SJMC to prepare for trial up until the final weeks of his partnership at Rodolf & Todd.[2]

Attorney Rush has knowledge and information about SJMC that is privileged and confidential and that he would not have but for his previous representation. He has attended hundreds of depositions and thousands of meetings with and for SJMC. He had systemic, repeated contacts with SJMC and its employees in nearly every SJMC case he was assigned, and the extent of his relationship with SJMC and his involvement in its representation is wholly distinguishable from the single contact the attorney had in *Harmon*.

Although Attorney Rush asserts that he rarely attended file review meetings, he states that he attended file review on February 24, 2024. First, February 24, 2024 was a Saturday, when Rodolf & Todd was closed. The file review referenced by Attorney Rush actually took place on

---

[2] The trial of this case was originally scheduled for March 4, 2024; however, right before trial, Attorney Rush tested positive for COVID, and as a result the trial was continued to May 6, 2024. Approximately two weeks before the trial was to begin, Attorney Rush gave his resignation to Rodolf & Todd.

January 23, 2024. <u>Exhibit K</u>, *Email from S. Hemphill*. Notably, this case was discussed and addressed at the January 23, 2024 file review at Rodolf & Todd. <u>Exhibit L</u>, *File Review List from 1-23-24*. Attorney Rush maintains that he has no personal knowledge or memory of *this* case. However, he has nearly fifteen years' worth of institutional knowledge and privileged and confidential information about SJMC – including representing SJMC in another case involving the same physician.

SJMC is not required to reveal confidential information to prove Attorney Rush has a conflict in this case, and there is unequivocal evidence that Attorney Rush has confidential information about SJMC, which satisfies the second factor of the inquiry. As such, there is real harm that will result to the justice system if Attorney Rush is allowed to represent Plaintiff in this lawsuit. Attorney Rush can use this privileged and confidential knowledge and information that he would never otherwise have but for his representation of SJMC. This undermines the judicial process, threatens the integrity of the court system, and would result in real harm to SJMC and this Court. While it is true that a civil litigant has a right to employ counsel of his/her choosing, this right is not absolute. *Towne v. Hubbard*, 2000 OK 30, ¶ 15, 3 P.3d 154, 161. "A litigant's choice of counsel may be set aside under limited circumstances, **where honoring the litigant's choice would threaten the integrity of the judicial process**." *Id*. This is exactly the scenario presented here, and Attorney Rush should be disqualified as a result.

WHEREFORE, premises considered, Defendant St. John Medical Center hereby submits its *Reply in Support of its Motion to Disqualify Plaintiff's Counsel and Request for Evidentiary Hearing* and respectfully requests that the Court enter an Order granting the same and awarding SJMC any other relief to which it is entitled.

Respectfully submitted,

s/ Charles H. Moody
Charles H. Moody, OBA 17237
Daniel C. Adams, OBA 30969
**RODOLF & TODD**
15 E. 5th Street, 6th Floor
Tulsa, OK 74103
918-295-2100
918-295-7800 facsimile
Chad@rodolftodd.com
Daniel@rodolftodd.com
*Attorneys for St. John Medical Center, Inc. d/b/a Ascension St. John Medical Center*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of August, 2024, I electronically transmitted the foregoing document to the Clerk of Eastern District using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jason Rush – Jason@rushlaw.net
Thomas LeBlanc – tleblanc@bestsharp.com
Andrew C. Garrison – agarrison@bestsharp.com
Michael J. O'Malley – Michael.OMalley@usdoj.gov
Alexander Sizemore - Alexander.Sizemore@usdoj.gov

                                               s/ Charles H. Moody