# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) MARLENE COLEMAN-SCRUGGS, | ) | |
| PLAINTIFF, | ) ) ) | |
| v. | ) ) | 23-CV-131-JAR |
| 1) UNITED STATES OF AMERICA, | ) | |
| 2) ST. JOHN MEDICAL CENTER, INC., | ) | |
| 3) TULSA RADIOLOGY ASSOCIATES, INC., and | ) | |
| 4) ANDRA DALE NUZUM-KEIM, | ) ) | |
| DEFENDANTS. | ) | |

**OPINION AND ORDER**

I.  Background

This is a Federal Tort Claims Act and medical negligence case based primarily on the Defendants not advising Plaintiff that a mammogram performed on April 30, 2021, showed a mass on her left breast. Plaintiff did not discover that she had abnormalities in her breast until an ultrasound and biopsy were performed on January 27, 2022, at which time the imaging showed the mass had grown. A biopsy revealed the cancer had spread to Plaintiff's lymph nodes. Plaintiff claims that earlier treatment would have resulted in a more favorable outcome.

II.  Procedural History

This suit was filed on April 20, 2023. At that time, Plaintiff was represented by Anthony Laizure. On August 25, 2023, the parties filed a Joint Status Report

indicating they wished to consent to the jurisdiction of the United States Magistrate Judge assigned to this case. Fed. R. Civ. P. 73(b)(1). On August 28, 2023, this Court entered a Minute Order deeming this matter CONSENTED TO THE MAGISTRATE JUDGE without the necessity for the filing or submission of any other documentation. As a result, this court exercises complete jurisdiction over this case through and including trial and the entry of a final judgment in accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). On February 15, 2024, Mr. Laizure moved to withdraw as counsel for Plaintiff. This Court granted the motion on February 21, 2024. Plaintiff had until April 22, 2024, to retain new counsel or proceed *pro se*. On April 22, 2024, Plaintiff moved for an extension of time to retain counsel, and this Court granted that request and extended Plaintiff's deadline to find new counsel or proceed *pro se* until May 10, 2024. On May 10, 2024, Plaintiff filed her second request for additional time to retain counsel, and this Court once again extended the deadline until June 3, 2024. On June 4, 2024, Jason C. Rush entered his appearance on behalf of the Plaintiff.

On July 1, 2024, Defendant, St. John Medical Center, Inc. d/b/a Ascension St. John Medical Center ("SJMC"), filed a Motion to Disqualify Plaintiff's Counsel and Request for Evidentiary Hearing. Through their Motion, SJMC sought to disqualify Jason C. Rush, and the Rush Law Firm from representing the plaintiff on two alternative grounds, based on Sections 1.6 and 1.9 of the Oklahoma Rules of

Professional Responsibility (ORPC). The motion to disqualify alleged Mr. Rush worked as an associate at Rodolf & Todd from 2009 to 2014 and was a partner through April 2024. During his approximate 15 years with Rodolf & Todd, Mr. Rush worked on over fifty cases involving SJMC. When Mr. Rush left Rodolf & Todd to form his own law firm at the end of April 2024, he was actively assigned to eleven SJMC lawsuits. On July 19, 2024, Mr. Rush responded stating that while he had represented SJMC in other matters he had neither entered his appearance in, nor even worked on, the present matter. Mr. Rush further stated he never accessed Rodolf & Todd's "open file" on this case and was wholly unaware of its contents. Mr. Rush also stated he was unaware of the status of the present litigation as of May 2024, when he formed Rush Law and did not even discuss the possibility of Plaintiff's representation in this matter until after he left his employment at Rodolf & Todd. Finally, Mr. Rush stated he does not possess or recalls any material or confidential client information from SJMC.

On September 9, 2024, this Court held an evidentiary hearing to hear evidence and arguments concerning the motion to disqualify. At that hearing, SJMC called Ms. Karen Callahan to testify. Ms. Callahan testified she was the managing partner of Rodolf & Todd. During the time frame in question, Mr. Rush worked at Rodolf & Todd, either as a partner or as an associate, from 2009 to 2024. He represented SJMC throughout this entire time in approximately 53 lawsuits. At the time he

resigned, Mr. Rush was actively assigned to eleven SJMC lawsuits. The overwhelming majority of Mr. Rush's SJMC representation over the years involved medical negligence cases, including cases in which radiology was alleged to be an issue. Mr. Rush had extensive relationships and dealings with SJMC. In defending medical malpractice cases, Mr. Rush met with SJMC employees, including physicians, nurses, risk managers and other administrative staff, about his cases on a routine basis. Mr. Rush would not only meet with these employees in the context of defending their specific conduct, but he would also meet with professionals as fact witnesses and subsequent treating providers. He would also represent providers in depositions when those providers would be subpoenaed in various types of cases. The present case involves the radiology care by Co-Defendant Andra Dale Nuzum-Keim. Mr. Rush previously represented SJMC in another lawsuit wherein both Dr. Nuzum-Keim and SJMC were both named defendants and the radiology care was at issue: Emory v. SJMC, et al., Tulsa County Case No. CJ-2019-4085.[1] Additionally, as part of his representation and through his attorney-client relationship, Mr. Rush obtained detailed knowledge about the peer review and credentialing processes at SJMC, and information about the Patient Safety Organization ("PSO") for SJMC, including what information is submitted to the PSO, who submits the same, and

---

[1] It should be noted counsel for for Dr. Nuzum-Keim in the Tulsa County litigation and the present case was present at the evidentiary hearing and noted for the record he had no objection to Mr. Rush representing the Plaintiff in this matter and was not joining the motion to disqualify. Counsel for Co-Defendant United States of America also stated on the record at hearing he was not joining the motion to disqualify.

whether that information would otherwise be available. Mr. Rush has attended more depositions and mediations on behalf of SJMC than can be realistically counted. He has been involved in detailed settlement conversations and has knowledge about how SJMC values cases, approaches settlement, and sets its reserves. He has represented SJMC at trial. Mr. Rush was meeting with SJMC employees, drafting and responding to discovery, attending depositions, retaining experts, attending mediation, engaging in extensive trial strategy discussions with SJMC, including preparing witnesses for trial, developing trial strategy, and working intimately with SJMC to prepare for trial up until the final weeks of his partnership at Rodolf & Todd in April 2024.

Mr. Rush cross examined Ms. Callahan and then presented himself as a witness at the evidentiary hearing. Mr. Rush reiterated the information contained in his response brief and the attached affidavit to that pleading stating he was an associate at Rodolf & Todd from 2009 to 2014, and a partner until April 30, 2024. During his time at Rodolf & Todd, he represented SJMC, as well as other affiliated medical entities, in various litigation-related matters, oftentimes involving allegations of medical negligence. Rodolf & Todd partners were only involved in cases they were personally assigned.  He was never assigned to represent SJMC in this case. He never worked on this case on behalf of SJMC. He never had personal knowledge of the underlying facts or the procedural history of this case during his

employment at Rodolf & Todd. He does not recall ever accessing Rodolf & Todd's litigation file in this case. He was unaware of the contents of Rodolf & Todd's litigation file for this case. He does not have material or confidential information about this case, regarding SJMC. He does not have general material or confidential information about SJMC. During his time at Rodolf & Todd, Karen L. Callahan would assign him to cases, and he would select his associate(s) to work those files. He rarely attended the "firm reviews of open cases" and when he did, it was only to provide updates of his cases. The only meeting he attended in 2024 was the February 2024 meeting. He has no personal knowledge of any information beyond cases he was assigned to. He has no personal recall of this case ever being discussed in a firm review meeting that he may have attended. In addition, Mr. Rush also testified he did not originally reach out to the Plaintiff in this matter, and she was, in fact, referred to him by another attorney in Tulsa. After speaking with Plaintiff, Mr. Rush called all the defense counsel involved in this matter and informed them of his possible involvement and whether or not they had any objections to the same.

III.     Legal Standards

Within the inherent supervisory powers of the Court is the discretionary authority to control attorneys' conduct. Redd v. Shell Oil Co., 518 F.2d 311, 314 (10th Cir. 1975). Consequently, motions to disqualify counsel are committed to the Court's sound discretion. E.E.O.C. v. Orson H. Gygi Co. Inc., 749 F.2d 620, 621

(10th Cir. 1984). "Except where a purely legal issue is involved, a district court's order of disqualification will be reversed only if the court has abused its discretion." Id.; see also Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1383 (10th Cir. 1994) (citation omitted). Attorneys practicing in the Eastern District of Oklahoma are expected to conduct themselves in accordance with the Oklahoma Rules of Professional Conduct, as adopted by the Oklahoma Supreme Court, as the standard of conduct of all members of the Oklahoma Bar Association. See, Title 5 O.S.A. Ch. l, App. 3A. LCvR 83.7(a). Thus, the OPCR applies and the Oklahoma Supreme Court's interpretation of the OPCR shall be instructive to this Court.

Two rules of The Oklahoma Rules of Professional Conduct, 5 O.S. 2011 Ch. 1, App. 3A are implicated in this cause: ORPC 1.9, entitled "Conflict of Interest: Former Clients," provides, in relevant part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

ORPC 1.6, entitled "Confidentiality of Information" provides, in relevant part:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).....

> (b) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

The Oklahoma Supreme Court has stated, "The standard for disqualifying counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified." Bd. of Cnty. Comm'rs of Harmon Cnty. v. Ass'n of Cnty. Comm'rs of Okla. Self-Insured Grp., 485 P.3d 234, 237 (Okla. 2021). "A party seeking to disqualify opposing counsel must prove the likelihood of such harm by a preponderance of the evidence." Jensen v. Poindexter, 352 P.3d 1201, 1205 (Okla. 2015). The fundamental question that must be answered by this Court is whether or not there is real harm to the integrity of the judicial process when a partner in a defense law firm leaves his firm; enters his appearance to represent a plaintiff in a previously filed lawsuit; the lawsuit was being defended by his previous firm while he was a partner of the firm; the lawsuit is against his former client; and he was actively representing that same client in different matters when he left his previous firm. Under those specific circumstances, that answer is yes.

SJMC has proven by a preponderance of the evidence there is real harm to the integrity of the judicial process under this specific factual scenario. SJMC's, Mr. Rush's former client, faith in a zealous representation is shaken to its core when its previous lead counsel begins prosecuting a case against his former client in a matter

that was already pending. Mr. Rush's assertion that he has no direct knowledge of this specific case is unpersuasive. Mr. Rush was actively and zealously representing SJMC when the present lawsuit was filed against SJMC by Plaintiff. SJMC has from the inception of the current lawsuit been represented by the law partners of Mr. Rush. This is not to say Mr. Rush could never be involved in a lawsuit adverse to SJMC; however, he should not prosecute a case against SJMC, when that matter was pending while he was also representing SJMC.

For the reasons set forth above, the Court finds there is a substantial relationship between Mr. Rush's prior representation of SJMC and his representation of the plaintiff in this case. Accordingly, disqualification is warranted under ORPC 1.9.

IV. Conclusion

Defendant's Motion to Disqualify (Doc No. 64) is GRANTED.

Dated this 24th day of October, 2024.

_____
United States Magistrate Judge