# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARLENE COLEMAN-SCRUGGS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 6:23-CV-131-JAR |

**OPINION AND ORDER**

Before the Court is the partial motion to dismiss [Dkt. 146][1] filed by defendant United States of America pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff Marlene Coleman-Scruggs timely responded in opposition [Dkt. 148], and the United States filed a reply [Dkt. 159]. The motion presents a single question: whether plaintiff's administrative claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a), exhausted a theory of negligence premised on the conduct of the Department of Veteran Affairs ("VA") after it received the results of her April 20, 2021 screening mammogram—specifically, its handling of Non-VA Community Care ("NVCC") outreach, the authorization the VA warned would be cancelled absent a return call within fourteen days, and the cancellation or expiration of the diagnostic breast-imaging orders. For the reasons below, the motion is **DENIED**, subject to the limitations set out in Part III.D.

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers provided by ECF.

## I. STANDARD OF REVIEW

The United States contends the Court lacks subject matter jurisdiction because the FTCA does not waive sovereign immunity as to unexhausted administrative claims. Sovereign immunity "shields the United States, its agencies, and officers acting in their official capacity from suit," and is "jurisdictional in nature." *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) (citation omitted). Such a challenge is properly raised under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) motions take one of two forms: a facial attack on the sufficiency of the complaint's jurisdictional allegations, or a factual attack on allegations upon which jurisdiction depends. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). This is a factual attack. The Court therefore does not presume the truth of the pleading's allegations, *Inst. for Justice v. Laster*, 432 F. Supp. 3d 1350, 1354 (W.D. Okla 2020), and has "wide discretion" to consider materials outside the pleadings without converting the motion into one for summary judgment, *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

The United States and its officers "enjoy immunity from suit except in instances where the United States has expressly waived that protection," and any waiver must be "unequivocally expressed" and strictly construed "in favor of the sovereign." *Flute v. United States*, 808 F.3d 1234, 1239 (10th Cir. 2015) (citation omitted). The FTCA effects a "limited waiver of sovereign immunity" by "making the Federal Government liable to the same extent as a private party for certain torts of federal employees." *Ohlsen v. United States*, 998 F.3d 1143, 1153 (10th Cir. 2021)

(citation omitted). That waiver is conditional: "[a]n action shall not be instituted … against the United States for … personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government … unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). Compliance with that condition is jurisdictional. *Bradley v. U.S. by Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991).

Presentment requires "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Lopez v. United States*, 823 f.3d 970, 976 (10th Cir. 2016) (*quoting Est. of Trentadue ex rel. Aguilar v. United States* ("*Trentadue*"), 397 F.3d 840, 853 (10th Cir. 2005)). The inquiry is "an eminently pragmatic one": a claim suffices if "the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct" and specifies the damages sought. *Trentadue*, 397 F.3d at 852. The claimant need not state legal theories, but the ensuing suit is confined to the causes of action "fairly implicit in the facts" presented. *Lopez*, 823 F.3d at 976 (citation omitted). Whether a particular theory was exhausted is resolved on a case-by-case basis. *Staggs v. U.S. ex rel. Dep't of Health & Hum. Servs.*, 425 F.3d 881, 884 (10th Cir. 2005).

## II. BACKGROUND

On April 30, 2021, plaintiff underwent a screening mammogram at St. John Medical Center on referral from the VA. The study disclosed a suspicious mass in her left breast, and the results were transmitted to the VA hospital in Muskogee,

Oklahoma. [Dkt. 2, ¶ 7]. Plaintiff underwent no further breast imaging until January 27, 2022, by which time the mass had grown, requiring surgery, radiation, and additional treatment. [*Id.* ¶ 8].

On May 17, 2022, plaintiff submitted a Standard Form 95 ("SF-95") to the VA. *See* [Dkt. 146-1]. Under "Basis of Claim," the form stated that the mammogram "showed a suspicious mass on the left breast"; that the "[r]esults were provided to the VA Hospital in Muskogee"; that the "VA Hospital in Muskogee did not communicated results of the mammogram to Ms. Scruggs"; and that "[a]nother mammogram was performed on January 27, 2022 and it showed the mass had grown, requiring surgery and radiation and other treatment that could have [been] avoided had the results of the April 30, 2021 mammogram been timely communicated to Ms. Scruggs." [*Id.* at 2]. Describing her injury, plaintiff stated that "[d]elayed communication of the abnormal mammogram results caused the cancer to grow, requiring more extensive treatment, surgery, and radiation than would have been required had the result been timely communicated." [*Id.*]. She identified April 30, 2021 as the "Date and Day of the Accident." [*Id.*]. Plaintiff filed this action on April 20, 2023. [Dkt. 2].

Plaintiff's designated breast-imaging expert, Gaelyn Scuderi, M.D., addressed the VA's conduct following receipt of the result: the NVCC team's outreach, a May 12, 2021 letter warning that authorization would be canceled absent a return call within fourteen days, the cancellation or expiration of the diagnostic breast-imaging orders, the October 2021 acknowledgment of that cancelation, and the delay in acting upon it. [Dkt. 119-2 at 8-12]. Dr. Scuderi also opined, based on the records, that the VA

reached plaintiff by telephone on May 7, 2021 and conveyed the abnormal result and the need for further imaging, and thereby met the standard of care. [*Id.* at 13-14]. Plaintiff denies that the call occurred. [Dkt. 148-2 at 3-6 (71:18-74:9), 7-9 (75:18-77:12)]. The United States moves to dismiss any claim premised on the post-notification conduct described in Dr. Scuderi's report for want of exhaustion.

## III. ANALYSIS

The parties agree on the governing test and disagree only about its application. The United States contends that plaintiff's SF-95 has a "laser-like focus" on a single act—the failure to communicate the April 30, 2021 result—and says nothing of scheduling referral authorization or cancellation, identifies no personnel connected to those functions, and supplies not dates for them. [Dkt. 146 at 13; Dkt. 159 at 3]. Plaintiff responds that her SF-95 described a continuing lapse between the VA's receipt of the abnormal result and the January 2022 study, and that the conduct within that interval is encompassed by the noticed facts. [Dkt. 148 at 6, 9]. The dispositive question is therefore not whether the SF-95 named negligent scheduling, authorization, or cancellation. It did not, and § 2675(a) of the FTCA does not require it. The question is whether the facts presented were sufficient to direct the VA to investigate the conduct plaintiff now challenges. *See Trentadue*, 397 F.3d at 853 (Section 2675(a) "require[s] notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable.").

Two principles frame that inquiry. First, a notice that identifies an injury does

not thereby exhaust every act that might have contributed to it; the claimant must supply facts from which the agency would understand that a particular course of conduct is in question. Second, where a new theory rests on a duty distinct from the duty implicated by the noticed facts and requires proof of a separate breach, it is not fairly implicit in those facts. *Lopez*, 823 F.3d at 976-77; *Staggs*, 435 F.3d at 884-85.

### A. THE GOVERNMENT'S AUTHORITIES INVOLVE DUTIES INDEPENDENT OF THE NOTICED CONDUCT.

In *Lopez*, the administrative claim described substandard care during a procedure; the later theory required proof that the hospital breached a distinct duty in credentialing the physician—an inquiry into institutional vetting that nothing in the claim signaled. 823 F.3d at 976-77. In *Staggs*, the claim described deviations in labor management neonatal treatment; the informed-consent theory depended on a separate duty to disclose options and risks, and the claim contained no suggestion that the plaintiff was uninformed or misinformed. 425 F.3d at 884-85. And in *Benally v. United States*, 735 F. App'x 480 (10th Cir. 2018) (unpublished), the notices had, as the panel put it, a "laser-like focus" on how a surgery was "performed"; the plaintiff's later attack on five follow-up appointments and the medical opinions rendered at them concerned care by a distinct process at distinct encounters that the notices never mentioned, and the references to alter deterioration "described the consequences" of the noticed surgery. *Id*. at 486-87.

The unifying feature of those cases is that the litigated theory would have required the agency to investigate a different actor, a different duty, or a different episode of care. That feature is absent here.

### B. PLAINTIFF'S NOTICE IDENTIFIED THE CONTINUING LAPSE, NOT MERELY A SINGLE ACT.

Plaintiff's SF-95 is not confined to one act on one date. It states that the abnormal result reached the VA; that the VA did not communicate it to her; that no further imaging occurred until January 27, 2022; that the mass grew during that interval; and that the resulting delay necessitated more extensive treatment. [Dkt. 146-1 at 2]. Those facts describe a continuing lapse in the VA's response to a known abnormal finding, bounded on both ends by dates supplied in the SF-95.

An agency investigating that submission would necessarily examine its own handling of the result after receipt. The duty implicated is the duty to respond reasonably to an abnormal screening finding and to advance the patient to the recommended diagnostic imaging. *See* [Dkt. 148 at 8]. Communication is the most conspicuous component of that duty, but the NVCC outreach, the authorization that was conditioned on a return call and then canceled, and the expiration of the diagnostic orders are not separate torts by separate actors. They are steps within the same institutional process, occurring in the same window, and bearing on the same injury. Unlike the credentialing inquiry in *Lopez* or the disclosure inquiry in *Staggs*, no distinct duty or distinct episode of care must be introduced to reach them.

The "Date and Day of Accident" entry does not alter the analysis. The SF-95 provides a single line for that entry, and a claimant alleging a continuing failure must select a date. Plaintiff's narrative supplies the temporal scope that the single-date field cannot, and the Court reads the form as a whole. *See Trentadue*, 397 F.3d at 852 ("[T]he FTCA's notice requirements should not be interpreted inflexibly.").

*Benally* is distinguishable on the ground the panel itself emphasized. There, the notices conveyed no concern about the adequacy of anything that occurred after the operation; the later facts appeared only as a measure of damages. 735 F. App'x at 486. Here, the interval is not offered merely as a measure of harm. The SF-95 affirmatively alleges that the VA held the abnormal result throughout that interval and did nothing effective with it. That allegation is directed at conduct, not consequence. For the same reason, the Court need not rely on *Hartmann v. United States*, No. 10-4012, 2011 WL 1542102 (W.D. Mo. Apr. 22, 2011) (unpublished) or *Mejia v. United States*, No. 13-1789, 2016 WL 4579084 (S.D.N.Y. Aug. 31, 2016) (unpublished), which the *Benally* panel described as "non-binding and easily distinguishable," *id.* at 487 n.12, and neither party's reading of those decisions affects the result.

### C. THE ASSERTED INCONSISTENCY PRESENTS A MERITS QUESTION, NOT A JURISDICTIONAL ONE.

The Government's strongest argument is that a negligent-scheduling theory presupposes a communication plaintiff denies ever occurred: the VA could not have arranged a follow-up imaging without discussing the abnormal result with her. [Dkt. 146 at 13-14]. The tension is real, and it may prove consequential at summary judgment or at trial, where plaintiff must establish a coherent breach and causation supported by competent expert testimony.

It does not, however, defeat jurisdiction. Section 2675(a) asks whether the agency received enough factual detail to begin investigating the potentially tortious conduct at issue. *Lopez*, 823 F.3d at 976. Answering that question does not require

the Court to determine which account of the facts is correct. An agency told that it received an abnormal mammogram result and that the patient went nine months without diagnostic imaging would investigate both possibilities—that no notification issued, and that notification issued by the follow-up process failed—because the records it would review are the same records. The Government's submission that an agency cannot be expected to investigate theories contradicting the notice is well taken as to theories genuinely foreign to the noticed facts. It carries less force where the competing accounts are alternative explanations of the same documented gap in the same patient's care. Nor does the Court draw an adverse jurisdictional inference from the scope of plaintiff's damages expert designation. *See* [Dkt. 159 at 6-7]. That scope may bear on what plaintiff can ultimately prove; it does not retroactively narrow what she presented to the agency in May 2022.

### D. SCOPE OF THE COURT'S RULING.

The Court's holding is limited. Plaintiff exhausted a claim that the VA, having received an abnormal screening mammogram result on or about April 30, 2021, failed to respond reasonably to that result and thereby delayed her diagnosis until January 27, 2022. The conduct Dr. Scuderi addresses—NVCC outreach, the fourteen-day authorization warning, and the cancellation or expiration of the diagnostic imaging orders—falls within that claim. Nothing in this Order permits plaintiff to advance theories resting on duties her administrative claim did not implicate, including negligent credentialing, hiring, supervision, staffing, or lack of informed consent, or to reach conduct outside the April 2021 to January 2022 interval. Should plaintiff's

proof depart from the claim presented, the Government may renew its jurisdictional objection.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the United States' partial motion to dismiss [Dkt. 146] is **DENIED**, subject to the limitations stated in Part III.D.

DATED this 14th day of September, 2026.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE